**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

BENNIE DAVID GUY
ADC #72720                                                                                                    PLAINTIFF

v.                                    CASE NO. 2:10-cv-00066-SWW-JJV

DAVE PARKMAN, Sheriff, St. Francis County;
GLEN RAMSEY, Detective, St. Francis County
Sheriff's Department; STATE OF ARKANSAS;
and DOES, St. Francis County Police Department
and Forrest City Police Department                                                     DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan

Webber Wright.   Any party may serve and file written objections to this recommendation.

Objections should be specific and should include the factual or legal basis for the objection.  If the

objection is to a factual finding, specifically identify that finding and the evidence that supports your

objection.  An original and one copy of your objections must be received in the office of the United

States District Court Clerk no later than fourteen (14) days from the date of the findings and

recommendations.   The copy will be furnished to the opposing party.   Failure to file timely

objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a new hearing for this purpose before either the District Judge or

Magistrate Judge, you must, at the time you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.        Why the evidence to be proffered at the new hearing (if such a hearing is granted) was

not offered at the hearing before the Magistrate Judge.

3.    The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

Plaintiff, Bennie David Guy, an inmate at the Arkansas Department of Correction, filed this action *pro se* pursuant to 42 U.S.C. § 1983.  He alleges that Defendants withheld exculpatory DNA evidence and are, therefore, liable for damages resulting from his wrongful conviction and sentence. (Doc. No. 2).  Defendants filed a Motion for Summary Judgment (Doc. No. 62) asserting they are entitled to summary judgment as a matter of law.  Given the seriousness of the allegations and because Mr. Guy made a timely demand for a jury trial, the Court held a prejury evidentiary hearing on April 26, 2011.  After testimony from the parties and considering all the evidence, it is recommended that the Motion for Summary Judgment (Doc. No. 62) be granted and Guy's Complaint (Doc. No. 2) be dismissed.

## I.    BACKGROUND FACTS

On January 19, 1996, Captain Glen Ramsey of the St. Francis County Sheriff's Department swore out an affidavit in support of an arrest warrant alleging the following:

> On or about May 25, 1995, Bennie David Guy went to the Harris residence and picked up 11 year old Jessica Lee Harris to spend the night with his children.  Prior to taking [ ] Jessica to his residence, Guy drove to the Shell Lake Motel, where he rented a room, raped the girl and forced her to perform oral sex on him.  Guy then

performed oral sex on Jessica.  The Motel records indicated that Guy rented a motel room at Shell Lake at the time indicated by Jessica.  Medical test performed by the Memphis Rape Crises Center shows that Jessica was raped, that there were tears to the vagina area and that sperm and hair samples were found on the victim.

(Doc. No. 2 at 14).  Based on this information, prosecutors for the First Judicial District of the State of Arkansas filed a felony Information on February 5, 1996, accusing Plaintiff of committing rape in violation of ARK. CODE ANN. § 5-14-103. (*Id.* at 15).  On August 28, 1996, Plaintiff appeared before St. Francis County Circuit Judge Ashley Higgins and entered a negotiated plea of guilty to the reduced charge of attempted rape.[1] (*Id.* at 16-17).  As a result of his plea, Plaintiff was sentenced to 360 months in the Arkansas Department of Correction (ADC).  (*Id.*)

Approximately eleven years later on December 11, 2007, Plaintiff filed a Motion to Dismiss, Writ of Habeas Corpus, and Writ of Error Coram Nobis asking the court to vacate and set aside his conviction.  (Doc. No. 69 at 15-16).  In the Writ of Habeas Corpus, Plaintiff stated there was DNA evidence[2] exculpating him and that this evidence was not available to him when he entered his plea of guilty.  (*Id.* at 15).  On February 28, 2008, St. Francis County Circuit Judge L.T. Simes, II, set aside Plaintiff's conviction and ordered a new trial.  (Doc. No. 2 at 18-19).  Judge Simes subsequently issued a March 2, 2009, order dismissing the case when more than a year had lapsed without a new trial.  (*Id.* at 20).

---

[1]Prior to this date, Plaintiff was convicted of similar offenses.  On July 19, 1996, he pled guilty to sexual assault in the 124th Judicial District Court of Gregg County, Texas, and was sentenced to forty years imprisonment.  He entered a negotiated plea to rape in Crittenden County, Arkansas, in August 1996 and was sentenced to serve 600 months with 120 months suspended, concurrent to his Texas sentence.

[2]This evidence consisted of two lab reports, one from the FBI dated March 20, 1996, and one from the Arkansas State Crime Lab dated April 23, 2009.  (Doc. No. 2 at 21-22, 24).

## II.      SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the evidence before the Court shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Hartsford v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008); *Earnest v. Courtney*, 64 F.3d 365, 366-67 (8th Cir. 1995).  When ruling on a motion for summary judgment, the Court will view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence so as to permit a finding in the nonmoving party's favor on more than mere speculation, conjecture, or fantasy.  *Id*.

## III.     ANALYSIS

### A.      Sheriff Dave Parkman

Defendants assert that Plaintiff's claim against Sheriff Parkman should be dismissed to due to Sheriff Parkman's death and Plaintiff's failure to file a motion to substitute party.  According to Rule 25(a) of the Federal Rules of Civil Procedure, following a party's death, a motion to substitute the proper party must be made within ninety days after the service of a statement noting the party's death.  *See* Fed. R. Civ. P. 25(a).  The failure to file a motion to substitute will result in the dismissal in the action by or against the decedent.  *Id.*

On June 10, 2010, Defendants filed a Suggestion of Death (Doc. No. 14) notifying the Court as to Sheriff Parkman's death.  During the prejury evidentiary hearing, Plaintiff admitted that he failed to file a motion to substitute party.  Thus, in accordance with the Federal Rules of Civil Procedure, the Court finds that Defendant's Motion for Summary Judgment on this point is proper

4

and Plaintiff's claim against Sheriff Parkman should be DISMISSED as a matter of law.

**B.      Captain Glen Ramsey**

Plaintiff makes two claims against Capt. Ramsey.  First, he asserts that Capt. Ramsey filed false charges against him when he swore out the affidavit. Second, he claims Capt. Ramsey later withheld exculpatory DNA evidence that would have exonerated him from the charge to which he pleaded guilty.

1.      Falsification of Charges

"A warrant based upon an affidavit containing a 'deliberate falsehood' or 'reckless disregard for the truth' violates the Fourth Amendment." *Bagby v. Brondhaver*, 98 F.3d 1096, 1099 (8th Cir. 1996); *see Franks v. Delaware*, 438 U.S. 154, 171 (1978).  When a law enforcement officer causes such a deprivation, that officer is subject to § 1983 liability.  *Bagby*, 98 F.3d at 1099; *see Burk v. Beene*, 948 F.2d 489, 494 (8th Cir. 1991).

During the evidentiary hearing, Capt. Ramsey testified that in May 1995 he received a phone call from Investigator Ed Laxton of the Crittenden County Sheriff's Department, informing him that a minor female had reported being raped by Plaintiff in a St. Francis County hotel.  After receiving this information, he went to the victim's home and interviewed the victim and her mother.  During the interview, the victim told Ramsey that on May 25, 1995, Plaintiff came to her home and picked her up so she could spend the night with his daughters.  She stated that they traveled Highway 70 back to Plaintiff's home.  Along the way, Plaintiff made two stops.  The first stop was at a liquor store; the second stop was at the Shell Lake Hotel where the victim said Plaintiff raped her.

As part of his investigation, Capt. Ramsey retraced the route Plaintiff traveled with the victim.  He said the owner of the liquor store recalled seeing a black vehicle stop and there was man inside the vehicle with the victim.  Capt. Ramsey testified that he also talked to the owner of the

Shell Lake Hotel, Riley Barrett, a former police officer.  Mr. Barrett had a policy of writing down the license plates of vehicles used by patrons of his hotel.  Capt. Ramsey testified that Mr. Barrett remembered a man and child checking into the hotel and gave Ramsey the license plate number. When Capt. Ramsey ran the number, it came back to a vehicle owned by Plaintiff's parents.

Capt. Ramsey also testified that the Crittenden County Sheriff's Office provided him with a copy of a report from the Memphis Rape Crisis Center.[3]  The report indicated that hair and semen were found on the victim and that the victim had vaginal tearing.  Noted in the report is the victim statement that Plaintiff picked her up on May 25, 1995, to spend the night with his daughters.  The victim also stated that Plaintiff stopped to buy wine coolers and took her to a motel, where he raped her.  Based on the evidence he had before him, Capt. Ramsey stated he had reason to believe that Plaintiff had committed a crime.

To support his assertion that Capt. Ramsey falsified the charges against him, Plaintiff submitted an April 1, 2011, letter from Deborah Nunley (daughter of Riley Barrett).  In the letter, Mrs. Nunley stated, "I do not remember the incident at all."  However, she said her late husband, Gale Nunley, told her mother, Bettye Barrett, that he was sitting in the laundry room at the hotel when he observed a car drive up and rent room eighteen directly across from the laundry room.  Mr. Nunley reported that he did not see a passenger in the vehicle nor did he see anyone go into or come out of the room with the man. Plaintiff then showed that a subpoena was issued for Gale Nunley to appear as a witness in his criminal case.  Plaintiff also showed that Riley Barrett, owner of the Shell Lake Hotel, was not subpoenaed to appear at trial.  Capt. Ramsey testified that the prosecutor was responsible for issuing the subpoenas in Plaintiff's criminal case and Ramsey had no involvement

---

[3]Admitted during the evidentiary hearing as Defendant's Exhibit 2.

in that process.

The Court recognizes that the letter and the subpoena list is evidence to support Plaintiff's position.  However, the overwhelming weight of the evidence supports a finding that Capt. Ramsey did not falsify the information in the affidavit in support of a search warrant.  The evidence before the Court shows that prior to seeking an arrest warrant, Capt. Ramsey corroborated the information he received from the victim.  Furthermore, the information Capt. Ramsey purportedly knew when he swore out the affidavit is corroborated by the information in the Rape Crisis Center report.  In that report, the victim very specifically reported to a third party medical professional that Bennie Guy was the person who had raped her.  Based on the evidence before Court, the Court finds that Plaintiff is unable to support his assertion that Capt. Ramsey falsified the charges against him and summary judgment should be granted in this regard.

2.      Exculpatory Evidence

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id.* at 87; *Clemmons v. Armontrout*, 477 F.3d 962, 965-66 (8th Cir. 2007); *Villasanna v. Wilhoit*, 368 F.3d 976, 978 (8th Cir. 2004).  *Brady* imposes an absolute duty on the prosecutor to produce all materially favorable evidence in the State's possession.  *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008); *Clemmons*, 477 F.3d at 966.  To prove a *Brady* violation, the Plaintiff must show that the government suppressed the evidence, the evidence was favorable to him, and the evidence was material to the issue of guilt or punishment.  *U.S. v. Sturdivant*, 514 F.3d 795, 803 (8th Cir. 2008); *U.S. v. Hernandez*, 299 F.3d 984, 990 (8th Cir. 2002).  Evidence is material if there is a reasonable probability that the outcome of the proceedings would have been different if the

evidence had been disclosed. *Sturdivant*, 513 F.3d at 803; *Hernandez*, 299 F.3d at 990.

*Brady's* protections also extend to the actions of law enforcement officers such as the investigating officer. *White*, 519 F.3d at 814. However, in the absence of proof establishing either bad faith or a conscious effort to suppress exculpatory evidence, an investigating officer's failure to disclose exculpatory evidence will not violate due process. *Id.* To recover damages under § 1983 for an investigating officer's violation of *Brady*, the Plaintiff must present proof that the officer intended to deprive the Plaintiff of a fair trial. *Id.*

Plaintiff is unable to offer any evidence establishing that Capt. Ramsey acted in bad faith or made a conscious effort to withhold exculpatory evidence. Capt. Ramsey testified that after writing his affidavit, he never saw or received Plaintiff's DNA results or the lab reports. He explained that once a warrant is approved and served, the suspect is arrested and upon completion of the suspect's paperwork, the case is turned over to the prosecutor. He also explained that because the Crittenden County Sheriff's Office requested the DNA testing and submitted the samples, the results were returned to Crittenden County and he never saw them.

At the conclusion of the hearing, the Court announced its intention to recommend dismissal of Plaintiff's Complaint. Mr. Guy later filed a Motion for Order (Doc. No. 76) and stated he uncovered the "original F.B.I. lab report." (*Id.* at 1). He stated, "Plaintiff hopes and prays this document will stop the summary judgment in favor of Defendants and reverse the summary judgment in favor of Plaintiff or pro-seed [*sic*] on to a full jury." *Id.*

The document is the same FBI laboratory report previously submitted; however, now appearing is a handwritten note that states, "Rec' 3 23 96 G. Ramsey SFSO." (*Id.* at p. 3). The Court rejects Plaintiff's newly submitted evidence as an attempt to mislead the Court by providing false evidence. It is not believable that Plaintiff has just now uncovered this critical evidence only

after the Court explained how the evidence shows Capt. Ramsey was simply unaware of this lab report. Moreover, it is not reasonable to expect that the lab report was mailed from Washington, D.C. on March 20, 1996, and in the span of only three days made it to the crime lab in Little Rock and then to Capt. Ramsey in St. Francis County, Arkansas.

Accordingly, Plaintiff is admonished for submitting false evidence. Furthermore, after viewing the evidence in a light most favorable to Plaintiff, the Court finds that Defendants' Motion for Summary Judgment is proper and should be granted.[4,5]

## IV.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.   Defendants' Motion for Summary Judgment (Doc. No. 62) should be GRANTED and Plaintiff's Complaint (Doc. No. 2) should be DISMISSED with prejudice.

2.   All remaining pending motions should be DENIED as moot.

---

[4]While not necessarily dispositive of the Court's ultimate findings in this Proposed Findings and Recommendations, the evidence indicates that Plaintiff has not been wholly truthful in the allegations in his Complaint. Plaintiff challenged his convictions in both St. Francis County and Crittenden County, Arkansas. The basis for his challenges has been "newly discovered" exculpatory DNA evidence. In 2008 he successfully overturned his conviction in St. Francis County, Arkansas. However, he was unsuccessful in Crittenden County, Arkansas. The Circuit Court of Crittenden County held a hearing on Plaintiff's Petition for Writ of Error Coram Nobis and Writ of Habeas Corpus. Plaintiff was represented by counsel and the court took testimony from witnesses. The court concluded that prior to entering his guilty plea in Crittenden County, Plaintiff "had possession of and was in fact aware of the March 20, 1996, FBI DNA report before he entered his negotiated guilty plea." (*See* Doc. No. 56 at 101 ¶ 3)**.** Similarly, while Plaintiff's instant Complaint suggests he was unaware of the DNA test results until late 2007 (Doc. No. 2 at 8), the Crittenden County Court determined that Plaintiff well knew about the test results as early as 2003 when he filed for clemency. (Doc. No. 56 at 101).

[5]Plaintiff has not articulated any damages suffered as a result of the St. Francis County conviction. Although this conviction was ultimately overturned, Plaintiff never served time for this offense because he was serving two other prison sentences for sexual assault and rape.

3.     The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis*

appeal from an order adopting the recommendations and the accompanying judgment would not be

taken in good faith.

DATED this <u>10th</u> day of June, 2011.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE